J-S57039-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| DEONTE SATCHELL | |
| Appellee | No. 610 EDA 2014 |

Appeal from the Judgment of Sentence entered July 12, 2013
In the Court of Common Pleas of Delaware County
Criminal Division at No: CP-23-CR-0004850-2011

BEFORE:  DONOHUE, MUNDY, and STABILE, JJ.

DISSENTING MEMORANDUM BY STABILE, J.:       **FILED MARCH 09, 2015**

Deonte Satchell received a sentence of time served (167 days) to 23 months in jail plus probation for brutally raping and assaulting his girlfriend. In my view, the Majority does not apply the applicable legal standards correctly in evaluating whether the trial court's sentence is unreasonable. By applying applicable legal standards correctly, I would hold the sentence is unreasonably lenient.  The law does not support the trial court's reasons for deviating well below the applicable range of the Sentencing Guidelines.[1] Further, the trial court did not properly account for the serious nature of Appellee's crimes and the protection of the public.  I respectfully dissent.

---

[1] 204 Pa. Code §§ 303.1-.18(c).

The Sentencing Code[2] sets forth our procedure for reviewing the discretionary aspects of sentences when a substantial question exists[3] that the sentence is inappropriate:

> **(c) Determination on appeal.--**The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:
>
> > (1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;
> >
> > (2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be **clearly unreasonable**; or
> >
> > (3) the sentencing court sentenced outside the sentencing guidelines and the sentence is **unreasonable**.
>
> In all other cases, the appellate court shall affirm the sentence imposed by the sentencing court.

42 Pa.C.S.A. § 9781(c) (emphases added); *see also Commonwealth v. Walls*, 926 A.2d 957, 963-67 (Pa. 2007) (setting forth the legal standard under which this Court reviews the discretionary aspects of a sentence imposed outside of the Sentencing Guidelines' range). The Majority accurately and thoroughly recounts our standard of review. However, it

_____

[2] 42 Pa.C.S.A. §§ 9701-81.

[3] I agree with the Majority that the Commonwealth's claim that "that the trial court imposed an unreasonable sentence outside of the guidelines and did not justify its sentence with sufficient reasons raises a substantial question in this case." *Commonwealth v. Wilson*, 946 A.2d at 767, 770 n.6 (Pa. Super. 2008), *aff'd per curiam*, 971 A.2d 1121 (Pa. 2009).

does not mention the Sentencing Guidelines that apply to Appellee's offenses.

Reference to the Guidelines highlights the leniency of Appellee's sentence. Under the applicable Guidelines, rape and involuntary deviate sexual intercourse (IDSI) are Level 5 offenses:

> Level 5 provides sentence recommendations for the most violent offenders and those with major drug convictions . . . . The primary purposes of the sentencing options at this level are punishment commensurate with the seriousness of the criminal behavior and incapacitation to protect the public.

204 Pa. Code § 303.11(b)(5). Appellee's rape and IDSI convictions have offense gravity scores (OGSs) of 12. Appellee, who had no prior convictions, has a prior record score (PRS) of 0. The Guidelines range for an OGS of 12 and a PRS of 0 is 48 – 66 months, and the aggravated/mitigated ranges are +/- 12 months. *See* 204 Pa. Code §§ 303.15-.16. Thus, the minimum suggested mitigated-range sentence called for Appellee to serve three years in prison. Instead, the trial court imposed a sentence with a **maximum** incarceration (two years less one day), *i.e.*, one year less than the **minimum** suggested mitigated-range sentence.[4]

_____

[4] The Pennsylvania Commission on Sentencing's 2013 Annual Report further highlights the unusually lenient nature of Appellee's sentence. *See* Pennsylvania Commission on Sentencing, *Annual Report*, at 59, Table 7 (2013), *available at*, http://pcs.la.psu.edu/publications-and-research/annual-reports/2013/view (last accessed Feb. 18, 2015). In 2013, the year Appellee was sentenced, only 5 out of 133 convicted rapists received a county jail sentence (as Appellee did). One offender received probation. Similarly, in 2013, 6 out of 218 offenders convicted of IDSI

*(Footnote Continued Next Page)*

The fact that the sentence here is outside of the Guidelines is central to the Commonwealth's argument. In fact, at the sentencing hearing, the Commonwealth conceded that a mitigated-range sentence would be acceptable, but strenuously argued for the trial court to sentence within the Guidelines. I am aware that the Sentencing Guidelines are advisory. ***See, e.g., Walls***, 926 A.2d at 961-62 & n.3. The Sentencing Code nonetheless requires a trial court to consider the Guidelines and explain on the record the reasons for imposing a sentence outside of the Guidelines. 42 Pa.C.S.A. § 9721(b). The Sentencing Code further requires this Court to examine outside-the-Guidelines sentences for unreasonableness instead of clear unreasonableness for inside-the-Guidelines sentences. ***Id.*** § 9781(c)(2) and (3). Here, like in ***Walls***, the "the sentencing court considered the guidelines." ***Walls***, 926 A.2d at 967. However, unlike in ***Walls***, the trial court failed to provide proper justification for departing from the Guidelines. ***Cf. id.***

This Court determines whether a sentencing court abused its discretion as follows:

> **(d) Review of record.--**In reviewing the record the appellate court shall have regard for:

*(Footnote Continued)* ———

received a county jail sentence. Two offenders (presumably one was Appellee) received probation. I am aware that trial courts sentence individual defendants, and cannot and should not tailor sentences to fit statewide data. I provide these statistics only to highlight the unusually lenient nature of Appellee's sentence.

- 4 -

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S.A. § 9781(d). In **Walls**, our Supreme Court described this standard as a "**component of the jurisprudential standard of review for an abuse of discretion**." **Walls**, 926 A.2d at 962 (emphasis added). Thus, the § 9781(d) factors are how this Court determines whether a sentencing court abused its discretion.

The Majority mentions § 9781, but fails to apply it. While a trial court has wide latitude in imposing sentence, its discretion is not unfettered or absolute. **Commonwealth v. Melvin**, 103 A.3d 1, 53-54 (Pa. Super. 2014) ("In fashioning a sentence, we have acknowledged that trial courts are vested with great, but not unfettered discretion.") (internal quotation omitted); **Commonwealth v. Whitman**, 880 A.2d 1250, 1252 (Pa. Super. 2005) ("While sentencing courts do possess broad discretion, that discretion is not unfettered and remains subject to appellate review."), *rev'd in part on other grounds per curiam*, 918 A.2d 115 (Pa. 2007); **Commonwealth v. Cornish**, 589 A.2d 718, 720 (Pa. Super. 1991); *see also Walls*, 926 A.2d at 968 (Baer, J., concurring) ("An appellate court should vacate a sentence where the trial court provides no basis, or an unreasonable basis, for the deviation [from the Guidelines].").

Our standard of review is not some talismanic key that closes the door to appellate review. *Walls* counsels that we must evaluate the reasonableness of the sentence using the § 9781(d) factors:

[U]nder the Sentencing Code an appellate court is to exercise its judgment in reviewing a sentence outside the sentencing guidelines to assess whether the sentencing court imposed a sentence that is "unreasonable." 42 Pa.C.S. § 9781(c), (d).

Yet, what makes a sentence "unreasonable" is not defined in the statute. Generally speaking, "unreasonable" commonly connotes a decision that is "irrational" or "not guided by sound judgment." THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE, 2084 (2d ed. 1987); *see* 1 Pa.C.S. § 1903 (words to be construed according to their common and approved usage). While a general understanding of unreasonableness is helpful, in this context, it is apparent that the General Assembly has intended the concept of unreasonableness to be a fluid one, as exemplified by the four factors set forth in Section 9781(d) to be considered in making this determination. Indeed, based upon the very factors set out in Section 9781(d), it is clear that the General Assembly intended the concept of unreasonableness to be inherently a circumstance-dependent concept that is flexible in understanding and lacking precise definition. *Cf. United States v. Crosby*, 397 F.3d 103, 115 (2d Cir. 2005) (explaining concept or reasonableness in context of sentencing matters).

*Walls*, 926 A.2d at 963.

The *Walls* court declined to fashion any "concrete rules," except that we must look to §§ 9781(d) and 9721(b) to analyze the reasonableness of a sentence. Moreover, although our Supreme Court has stated that this Court should "infrequently" find a sentence unreasonable, *Walls*, 926 A.2d 964, it did not hold this Court may **never** reverse a sentence as unreasonably excessive or lenient. Even after *Walls*, we have found sentences unreasonable. *See, e.g., Commonwealth v. Daniel*, 30 A.3d 494, 499

(Pa. Super. 2011) (holding trial court's reasons did not justify 11½ – 23 month sentence for aggravated assault); **Wilson**, 946 A.2d at 769 (holding trial court's reasons did not justify 11½ – 23 month sentence for robbery and burglary).

Because the Majority has mentioned the § 9781(d) factors only in passing, I will apply the factors myself. I look first to "the nature and circumstances of the offense and the history and characteristics of the defendant." 42 Pa.C.S.A. § 9781(d)(1). Appellee raped and assaulted his girlfriend by using physical force to subdue her despite her repeated, explicit pleas to stop. At sentencing, the trial court first acknowledged the seriousness of Appellee's crimes, stating that "[t]his type of rape is so destructive because it betrays the fundamental basis of a loving relationship." N.T. Sentencing, 7/12/13, at 4. Yet, the trial court later minimized the depravity of Appellee's conduct, stating that the rape "lacked the attendant circumstances associated with most rapes. This crime did not involve a fiend lurking in a park, nor a burglar attacking [a] homeowner, nor a lothario on a first date with his prey." Trial Court Opinion 3/10/14, at 13.

The trial court provided no support for its bald assertion that "most rapes" involve sensational attacks on unsuspecting strangers or date rapes, and there is none in the record. In fact, the opposite is true: most sexual

assault victims know the perpetrators.[5]   It is true in this case, too.   The victim and Appellee were in a relationship, lived together, and attended the same church.   I agree with the Commonwealth that this case fits the unfortunate, common profile of domestic assault.   Appellee and the victim once had a loving relationship, and there was a possibility for reconciliation, which led to the victim's unwillingness to prosecute Appellee.

The trial court also noted that it had never seen a rape victim testify on the rapist's behalf at sentencing.   Trial Court Opinion, 3/10/14, at 13-14. This misses the point.   As the Commonwealth notes, domestic violence victims commonly do not want the Commonwealth to prosecute.   If the victim does not testify, the Commonwealth cannot even bring charges.   For example, here the victim's testimony was the *sine qua non* of the proof of forcible compulsion.   Thus, where a victim wants to testify on behalf of the defendant, the case cannot proceed to a preliminary hearing or trial.

The trial court also offered the speculative conclusion that the victim does not suffer from Battered Woman Syndrome.   I realize that a sentencing judge must evaluate a wide range of material at sentencing, but Appellee here presented no evidence that supports the trial court's nonprofessional

---

[5] Intimate partners account for almost 30% of rapes or sexual assaults of females, and over 70% of female rape victims know their assailants. Shannan M. Catalano, *National Crime Victimization Survey: Criminal Victimization, 2005*, at 9 Table 9 (Bureau of Justice Statistics, Sept. 2006), *available at* http://www.bjs.gov/content/pub/pdf/cv05.pdf.

diagnosis. Appellee could have presented evidence in this regard, but he did not. Medical, psychological, and psychiatric diagnoses are properly left to qualified experts. Moreover, the trial court did not acknowledge that the victim was threatened by one of Appellee's friends after she reported the rape to police. *See* N.T. Trial, 2/20/13, at 286. Also unmentioned is the fight that occurred between the victim and Appellee—while he was on bail and subject to a protection from abuse order—necessitating police involvement. *See* N.T. Sentencing, 5/24/13, at 70-71.

The Commonwealth also argues that the trial court failed to consider Appellee's prior contact with law enforcement. The trial court should have given some weight, rather than none, to Appellee's violation of the protection from abuse order while on bail. It also understated his arrest record. The trial court had little information regarding the facts or disposition of Appellee's prior charges, except that they were withdrawn in Philadelphia Municipal Court. *See* N.T. Sentencing, 7/12/13, at 8-10. However, it repeatedly understated what little information it had. Appellee did not have "one prior arrest for simple assault." *Id.*; Trial Court Opinion, 3/10/14, at 4, 11. Appellee had been arrested at least twice, for **robbery** (a first-degree felony), simple assault, terroristic threats, and harassment. *See* N.T. Sentencing, 5/23/14 at 48. Though the charges were withdrawn, the trial court failed to give proper weight to Appellee's arrest history because it was mistaken regarding that history.

Next, I consider the trial court's opportunity to observe Appellee, and the results of the presentence investigation. 42 Pa.C.S.A. § 9781(d)(2). Though I am skeptical that the record supports Appellee's sincere remorsefulness, I agree with the Majority that we cannot reassess the trial court's factual finding in this regard.

Turning to the third factor, 42 Pa.C.S.A. § 9781(d)(3), the trial court's findings are either unsupported by the record, or do not support imposition of a lenient sentence.

The trial court opined that the victim's statements at sentencing constituted "90%" of its motivation for imposing a lenient sentence. *See* N.T. Sentencing, 7/12/13, at 5. While the victim's wishes are certainly a valid consideration, they cannot be used to the exclusion of almost every other consideration. A sentencing court must consider, *inter alia*, the protection of the public and the impact of the offense on the community. *See* 42 Pa.C.S.A. § 9721(b). Thus, in addition to the victim's wishes, a sentencing court must take into account the general deterrent effect of the sentence. Here, by relying almost entirely on the victim's wishes, the trial court failed to take into account protection of the public and the impact of the offense on the community.

Furthermore, a trial court may not "double count" factors already taken into account by the Guidelines. ***Commonwealth v. Goggins***, 748 A.2d 721, 732 (Pa. Super. 2000) (*en banc*). For that reason, I would find error in using Appellee's PRS of 0 to deviate below the mitigated range. The

Guidelines already account for Appellee's lack of prior convictions. **See Commonwealth v. Celestin**, 825 A.2d 670, 679 (Pa. Super. 2003) ("The court's reliance upon [the defendant's lack of a prior record] was clearly misplaced since the guideline sentence recommendations already contemplate a defendant's [PRS].").

Likewise, the trial court erred in relying on the fact that Appellee did not make use of a weapon during the rape. Had Appellee used or possessed a deadly weapon, the deadly weapon enhancement (DWE) sentencing matrixes—and not the basic matrix would have applied. The DWE matrixes include higher recommended Guidelines ranges. **See** 204 Pa. Code § 303.17.

The trial court further erred in relying on Appellee's lifetime registration requirement under Pennsylvania's Sex Offender Registration and Notification Act (SORNA).[6] Although it recognized SORNA registration is not a punishment, the trial court opined that the burden of SORNA registration is "arguably more severe than incarceration." Trial Court Opinion 3/10/14, at 15-17. SORNA registration is a collateral consequence of a conviction. It is not punishment. **Commonwealth v. McDonough**, 96 A.3d 1067, 1071

---

[6] 42 Pa.C.S.A. §§ 9799.10-.41.

(Pa. Super. 2014). I also do not believe that SORNA registration is "arguably worse" than actual incarceration.[7]

The Majority characterizes the trial court's comments on Appellee's prior record, the lack of a weapon, and SORNA consequences as a mere description of the circumstances of the case. The Majority charges the Commonwealth with taking the trial court's statements out of context. Rather, it is the Majority that takes the trial court's statements out of context. The record clearly shows that the trial court relied on these factors to justify imposing a sentence outside of the Guidelines.

During its statutorily required on-the-record **colloquy of the reasons for deviating from the Sentencing Guidelines**, the trial court stated that Appellee had a zero prior record score, N.T. Sentencing, 7/12/13, at 8, did not use a weapon, *id.* at 9, and will be subject to lifetime SORNA registration, *id.* at 6. ***See also id.*** at 12 ("Now in light of everything I've said, I'm deviating from [the Sentencing Guidelines]."). If the trial court's oral colloquy is ambiguous, its written opinion makes clear that it relied on

_____

[7] The Majority erroneously categorizes the trial court's use of SORNA registration as a description of the "particular circumstances of the case." Majority Memorandum at 17. Nothing about SORNA, however, is particular to this case. **All** offenders convicted of rape must register for life as sex offenders. ***See*** 42 Pa.C.S.A. §§ 9799.14(d)(2), 9799.15(a)(3) (designating rape as a Tier III offense requiring lifetime registration). Indeed, if, as the trial court posited, SORNA registration is "arguably worse than incarceration" and a reason to mitigate here, then it is a reason to mitigate in **every** rape case.

these factors (incorrectly so, **see supra**) to deviate below the Sentencing Guidelines. Part B of the trial court's opinion is entitled "Criteria for Deviation from Sentencing Guidelines." Trial Court Opinion, 3/10/14, at 10. In Part B(1), the trial court stated "The [Appellee] had no prior history of violent behavior. In fact, the [Appellee] has no prior criminal history (i.e., a zero [prior] record score)." **Id.** at 11 (citation of notes of testimony omitted); **see also id.** at 18 (suggesting that the sentence is not manifestly unreasonable because Appellee "had no prior criminal history"). Again, in Part D of its opinion, the trial court stated its believe that SORNA registration is "arguable more severe than incarceration." **Id.** at 15-17.

By sentencing Appellee to less than two years in jail, the trial court ensured that it—and not the Pennsylvania Board of Probation and Parole— was the parole authority. **See** 42 Pa.C.S.A. § 9775. At sentencing, the trial court noted that the Board of Probation and Parole often does not grant parole to sex offenders upon the expiration of their minimum sentences. N.T. Sentencing, 5/24/13, at 51-53. It accordingly expressed concern that, if it imposed a sentence at the bottom of the mitigated range (3 – 6 years), Appellee would remain in prison long after he served the minimum sentence. **Id.** at 56; **see also** Trial Court Opinion, 3/10/14, at 15 & n. 10. The trial court opined "that a prolonged incarceration of [Appellee] just might in the long run negatively impact the safety of [the] public and 'make [Appellee] a bitter parolee, and a greater danger to the community.'" Trial Court Opinion, 3/10/14, at 11 (quoting N.T. Sentencing, 7/12/13, at 8-9)). I fail

to see how prolonged incarceration or parole would make Appellee a **greater** danger to the community than would a short stint in jail followed by release into the community at large. I do not believe it is appropriate for a trial court to speculate regarding a defendant's expected release date on state parole. Here, the trial court allowed its distaste for the Board of Probation and Parole's parole decisions for sex offenders to color its sentencing decision.

Finally, I review the applicable Sentencing Guidelines. 42 Pa.C.S.A. § 9781(d)(4). As in *Daniel*, this sentence is not a "slight departure from those recommendations." *Daniel*, 30 A.3d at 499. Appellee used force to overpower, assault, and rape his paramour. Despite the violent nature of Appellee's crimes, the trial court's **maximum** aggregate sentence of incarceration (two years less one day) is one year less than the **minimum** suggested **mitigated** Guidelines ranges (three years). The trial court's findings do not support its departure from the Sentencing Guidelines. Although the trial court heavily emphasized the victim's forgiveness of Appellee and the potential for rehabilitation, the sentence must still be consistent with the gravity of the offense. *See Wilson*, 946 A.2d at 775 ("Here, the [trial] court did not but should have recognized the brutal nature of the acts Wilson committed."); *Celestin*, 825 A.2d at 681-82 ("On remand, we remind the trial court that its sentence must reflect not just the rehabilitative needs of Mr. Celestin, but also the gravity of the offense and protection of the public.").

The facts of this case are a depressingly common feature of American life. Appellee committed a depraved act of violence against his domestic partner. When charges were filed, the victim had second thoughts and did not want to testify or see her boyfriend go to prison. These facts are not unusual or unique and do not, therefore, justify a sentence well below the mitigated range of the Sentencing Guidelines. The unreasonably lenient sentence imposed fails to account for the serious, violent nature of Appellee's crimes, and it fails to accord the citizens of this Commonwealth the protection they deserve.

Under the Majority's analysis, it is hard to envision how we could vacate **any** sentence on appeal. A trial court has wide discretion in sentencing, but that does not mean we must act as a rubber stamp for trial courts on appeal.[8]

Certainly, the victim's forgiveness of Appellee and his need for rehabilitation are relevant factors at sentencing. Indeed, these factors may suggest the appropriateness of a mitigated sentence, something the

---

[8] In fact, Article V, § 9 of the Pennsylvania Constitution guarantees the right of appeal. I realize that we have rejected a constitutional challenge to § 9781, which limits the right to challenge the discretionary aspects of sentencing on appeal. **See Commonwealth v. Chilcote**, 578 A.2d 429, 435-37 (Pa. Super. 1990), *appeal dismissed as improvidently granted*, 625 A.2d 614 (Pa. 1993). However, I am sympathetic to the argument that erecting higher and higher arcane procedural barriers runs afoul of Article V, § 9 when those limitations become unreasonable.

Commonwealth conceded here. These factors, however, do not obviate the social and legal imperative that an offender's punishment must reflect the seriousness of his crimes and ensure the protection of the public. 42 Pa.C.S.A. §§ 9721(b), 9781(d). The sentence here belies adequate consideration of these two items. Rather, this case is like *Daniel*, where we concluded that the defendant's drug addiction and acceptance of responsibility by pleading no contest were insufficient reasons to impose a 11½ – 23 month sentence for an aggravated assault resulting in serious bodily injury to the victim. *Daniel*, 30 A.3d at 498-99. This case is like *Wilson*, where we held the defendant's drug dependence and stated penitence, did not justify a 11½ – 23 month sentence for his guilty pleas to robbery and burglary. *Wilson*, 946 A.2d at 774-75.

In imposing sentence, the trial court unreasonably placed too much weight on the wishes of the victim, and failed to account for the serious nature of Appellee's offenses and the protection of the public. It also relied on factors that were either irrelevant or already accounted for by the Guidelines. The trial court appears to have used the victim's wishes and its disagreement with the Board of Probation and Parole's practices regarding parole of sex offenders to keep Appellee in county jail, which resulted in the trial court imposing an overly lenient sentence. I would vacate and remand for resentencing. Hence, I respectfully dissent.